A07A1686. COOPER v. THE STATE.
(652 SE2d 909)

BLACKBURN, Presiding Judge.

Following a jury trial, Michael Cooper appeals his conviction of child molestation[1] (two counts), statutory rape,[2] and aggravated sexual battery,[3] contending (1) that he received ineffective assistance of counsel, (2) that the trial court erred in admitting hearsay and other allegedly improper testimony from two expert witnesses, (3) that the trial court erred by admitting testimony that allegedly bolstered the credibility of the victim (who testified), and (4) that the trial court erred in allowing the State to comment on Cooper's failure to initially come to police and his decision to retain counsel. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of

---

[1] OCGA § 16-6-4 (a).

[2] OCGA § 16-6-3 (a).

[3] OCGA § 16-6-22.2 (b).

innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Punctuation omitted.) *Eady v. State.*[4] So viewed, the evidence shows that Cooper, who lived with his brother's family, invited his brother's stepdaughter, C. B., to view a pornographic video when C. B. was 11 years old. Part way through the video, Cooper undressed and instructed C. B. to do the same, and he put his finger in her vagina and had sexual intercourse with her. Cooper periodically had sexual intercourse with C. B. until C. B. was 13 years old, when she told her mother about the abuse after her school hosted a speaker discussing sexual abuse.

C. B.'s mother called the police, who investigated and arranged for a videotaped forensic interview by a child sex abuse counselor. After C. B. described the abuse by Cooper to police and the interviewer, Cooper was arrested and charged with child molestation, statutory rape, and aggravated sexual battery. Following a jury trial, Cooper was convicted and sentenced on all counts, giving rise to this appeal.

1. Cooper contends that he received ineffective assistance of counsel at trial in several respects. However, this contention has been waived.

> It is axiomatic that a claim of ineffectiveness of trial counsel must be asserted at the earliest practicable moment. This requires that the claim be raised before appeal if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time.

(Citations and punctuation omitted.) *Carter v. State.*[5]

Here, Cooper was found guilty and sentenced on November 14, 2006. His trial counsel was replaced by appellate counsel, who, on November 27, 2006, filed a notice of appeal. Neither trial counsel nor appellate counsel moved for a new trial asserting ineffective assistance of trial counsel, which motion was available when appellate counsel filed the notice of appeal. See OCGA § 5-5-40 (a). Because "appellate counsel was appointed prior to the filing of the notice of appeal, [Cooper] is procedurally barred from raising for the first time

---

[4] *Eady v. State,* 256 Ga. App. 696 (569 SE2d 603) (2002).
[5] *Carter v. State,* 275 Ga. App. 846, 846-847 (2) (622 SE2d 60) (2005).

on appeal the issue of ineffectiveness of counsel." *Jackson v. State.*[6] See *Glover v. State*[7] (clarifying that the claim must "be raised *before appeal* if the opportunity to do so is available") (emphasis in original).

2. Cooper contends that the trial court erred in admitting hearsay and other allegedly improper testimony from two expert witnesses. We disagree.

At trial, the State called a pediatrician who examined C. B. and testified as to the examination and her findings, which were not conclusive as to sexual abuse due to the timing of the examination. During her testimony, the doctor stated that C. B. told her that she had been molested by Cooper. The State also called the forensic interviewer who testified as an expert in interviewing child victims of sexual abuse and stated that in the interview C. B. "disclosed that her uncle, Michael Cooper, he — he was having sex with her."

Cooper now argues that the experts' statements as to what C. B. told them were inadmissible because (i) the statements were conclusions that did not require professional skills or knowledge, and (ii) the statements were hearsay. However, Cooper "did not object to this testimony when it was offered; therefore, the issue is not preserved for appeal." *Dotson v. State.*[8]

> Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.

(Punctuation omitted.) *Freeland v. State.*[9]

Nevertheless, we note that neither expert improperly expressed her opinion as to an ultimate fact within the ken of the jurors, see, e.g., *Allison v. State;*[10] rather, each expert merely recounted what C. B. told her. We further note that similar testimony has been held to be admissible under the Child Hearsay Statute,[11] which creates a hearsay exception for certain statements by children regarding abuse. See *Knopp v. State.*[12]

---

[6] *Jackson v. State,* 270 Ga. 436, 437 (2) (510 SE2d 815) (1999).
[7] *Glover v. State,* 266 Ga. 183, 184 (2) (465 SE2d 659) (1996).
[8] *Dotson v. State,* 276 Ga. App. 418, 421 (2) (623 SE2d 252) (2005).
[9] *Freeland v. State,* 223 Ga. App. 326, 327 (2) (477 SE2d 633) (1996).
[10] *Allison v. State,* 256 Ga. 851, 853 (5) (353 SE2d 805) (1987).
[11] OCGA § 24-3-16.
[12] *Knopp v. State,* 190 Ga. App. 266, 267 (2) (378 SE2d 703) (1989).

3. Cooper also contends that certain testimony improperly bolstered the credibility of C. B. However, because he failed to assert this error in the trial court, it is waived.

At trial, after C. B. testified as to what Cooper had done to her, the State called C. B.'s aunt, who testified that she believed C. B. and had no reason to doubt her. Cooper now argues that this testimony improperly bolstered C. B.'s account of her abuse. However, Cooper's "trial counsel offered no objections to the questions and answers of which defendant now complains," *Carr v. State*,[13] and his silence in the face of that testimony precludes him from challenging such testimony now. See *Berman v. State*[14] (failure to object to testimony that victim's account was "solid" resulted in waiver); *Glidewell v. State*[15] (failure to base objection on bolstering credibility resulted in waiver).

4. Cooper contends that the trial court erred in allowing hearsay testimony from witnesses who related what C. B. told them about the abuse by Cooper. We disagree.

At trial, C. B.'s mother and aunt testified as to what C. B. told them about the abuse. However, Cooper did not object to the testimony at trial, so this enumeration is waived. See *Dotson v. State*, supra, 276 Ga. App. at 421 (2). Despite Cooper's waiver, we note that similar statements have been held to fall within the scope of the Child Hearsay Statute. See *Steverson v. State*.[16]

Cooper also challenges the admission of testimony by C. B. that she was staying with her aunt, "[b]ecause she was saying that she didn't want me in that situation again in the house." However, Cooper failed to object to this statement. Despite Cooper's waiver, we note that this statement was offered to explain why C. B. was living with her aunt, and not to prove the truth of the matter asserted, i.e., that the aunt did not actually want C. B. in the house with Cooper. Moreover, the aunt testified and was cross-examined at trial. Accordingly, we discern no reversible error. See *Quintanilla v. State*[17] (purpose of the hearsay rule satisfied where declarant testified and was cross-examined).

5. Cooper contends that the trial court erred in admitting the cumulative testimony of several witnesses as to what C. B. told them about her abuse. We disagree.

At trial, the State called C. B.'s mother, pediatrician, aunt, a forensic interviewer, and an investigating police officer to testify as to

---

[13] *Carr v. State*, 214 Ga. App. 367, 368 (2) (448 SE2d 33) (1994).

[14] *Berman v. State*, 279 Ga. App. 867, 870 (3) (632 SE2d 757) (2006).

[15] *Glidewell v. State*, 279 Ga. App. 114, 118 (2) (a) (630 SE2d 621) (2006).

[16] *Steverson v. State*, 276 Ga. App. 876, 880 (3) (625 SE2d 476) (2005).

[17] *Quintanilla v. State*, 273 Ga. 20, 23 (3) (a) (537 SE2d 352) (2000).

what C. B. told them about her abuse. Cooper now contends that such testimony should have been excluded because it was cumulative and unduly prejudicial. However, as Cooper did not object to such testimony at trial, this contention is waived. See *McClain v. State.*[18] Nevertheless, we note that C. B.'s credibility was an issue at trial which was raised during the direct and cross-examination of C. B.; accordingly, allowing the additional corroborating testimony was not necessarily unduly cumulative or prejudicial.

6. Finally, Cooper contends that the trial court erred in allowing the State to cross-examine Cooper about his retention of a lawyer and failure to come forward to police. We disagree.

During trial, Cooper's attorney elicited several statements from witnesses regarding Cooper's decision to hire a lawyer, including the following by Cooper himself on direct:

> Cooper's attorney: Why didn't you go to the police department?
> Cooper: I [felt] that — I should [not] have [gone] to . . . police department without an attorney being with me for something that [I] really haven't done.
> Cooper's attorney: Why do you need an attorney if you didn't do that?
> Cooper: Well, some — you never know [what] the outcome [is] going to be. They might keep you in there. You never know.
> Cooper's attorney: Were you scared?
> Cooper: No, sir.
> Cooper's attorney: If you wasn't scared why didn't you go to the police department?
> Cooper: Because I — I really didn't have no reason to go because I didn't have — I haven't done anything.
> Cooper's attorney: You could have just [gone] there and tell them you didn't do anything?
> Cooper: True.
> Cooper's attorney: Why didn't you do that?
> Cooper: I still — like I say, I didn't want to go without a lawyer.

After this exchange, the State asked similar questions of Cooper on cross-examination and challenged his credibility:

---

[18] *McClain v. State*, 226 Ga. App. 714, 718 (3) (487 SE2d 471) (1997).

> State's attorney: You didn't contact the police and tell them immediately that this wasn't true because you knew what [C. B.] was saying was true; isn't that right, Mr. Cooper?
>
> Cooper: No, ma'am, it isn't true.
>
> State's attorney: As a matter of fact, you wanted to make sure that you had an attorney in place, in line first, before you approached the police; isn't that right, Mr. Cooper? Isn't that why you didn't contact the police?
>
> Cooper: No, ma'am.

Cooper now contends that the State improperly asked about his decision to retain an attorney before he approached police. However, Cooper never objected at trial; moreover, Cooper's attorney first introduced this line of questioning, and having done so, Cooper cannot now argue that the State improperly followed up on the same line of questioning. See Givens v. State[19] ("defendant first opened the door to this line of questioning, he cannot now complain") (punctuation omitted); Smith v. State;[20] Cobb v. State.[21] Therefore, we discern no reversible error.

Cooper also challenges the State's comments during closing argument which recounted testimony by Cooper's brother (C. B.'s stepfather), who testified for the defense on direct (1) that upon learning of the abuse he himself did not initially call police because he wanted to contact Cooper and retain a lawyer, and (2) that he knew the abuse was not possible because C. B. was never alone with Cooper.

> There is something else that was puzzling about [Cooper's brother's] testimony. He said he didn't call the police immediately when [C. B.] told him because he wanted to hear from [Cooper] first. . . . He also said he didn't call the police because he wanted to investigate on his own. . . . What did you need to find out for yourself? What did you need to call to find out from [Cooper]? Why did they need to go find an attorney first if you knew? You knew this.

Cooper contends that these statements improperly commented on his decision to not come forward and to exercise his constitutional right to counsel. See, e.g., Pearson v. State[22] ("a prosecutor may not comment on an accused's pre-arrest silence or failure to come forward

---

[19] Givens v. State, 273 Ga. 818, 822 (3) (546 SE2d 509) (2001).

[20] Smith v. State, 258 Ga. 181, 182 (1) (366 SE2d 763) (1988).

[21] Cobb v. State, 251 Ga. App. 697, 698 (555 SE2d 79) (2001).

[22] Pearson v. State, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004).

voluntarily, even if he chooses to testify"). However, Cooper's attorney raised the issue on direct, Cooper's attorney did not object to the State's cross-examination or closing argument, and the State's comments during closing were made about Cooper's brother's testimony as to why he did not call the police, not as to why Cooper himself did not come forward. Accordingly, we discern no reversible error.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED OCTOBER 23, 2007.

*Lynley R. Teras, Adam S. Jaffe*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.